## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPORTSMAN'S WAREHOUSE, INC., et al. | ) | Case No. 09-10990 (CSS) |
| | ) | |
| Reorganized Debtors. | ) | Jointly Administered |
| _____ | ) | |
| SPORTSMAN'S WAREHOUSE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 10-50818 (CSS) |
| | ) | |
| MCGILLIS/ECKMAN INVESTMENTS- | ) | |
| BILLINGS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| MCGILLIS/ECKMAN INVESTMENTS- | ) | |
| BILLINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 10-52913 (CSS) |
| | ) | |
| SPORTSMAN'S WAREHOUSE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

RICHARDS LAYTON & FINGER, P.A.          MORRIS, NICHOLS, ARSHT
Russell C. Silberglied                  & TUNNELL LLP
Katisha D. Fortune                      Gregory W. Werkheiser
Julie A. Finocchiaro                    1201 North Market Street
One Rodney Square                       Wilmington, Delaware 19899
920 North King Street
Wilmington, Delaware 19801

|  |  |
|---|---|
| -and- | -and- |
| O'MELVENY & MYERS LLP | BLACKBURN & STOLL, LC |
| Stephen H. Warren | Bryce D. Panzer |
| Matthew W. Close | 257 East 200 South, Suite 800 |
| 400 South Hope Street | Salt Lake City, Utah 84111 |
| Los Angeles, California 90071 | |
| | Counsel for McGillis/Eckman |
| Counsel for Sportman's Warehouse, Inc. | Investments-Billings, LLC |

Dated:  September 16, 2011

Sontchi, J. _Clfohi Shtle_

## OPINION[1]

## INTRODUCTION

Before the Court is a motion filed by defendant McGillis/Eckman Investments-

Billings, LLC ("McGillis") to dismiss the adversary proceeding (the "SWI Adversary")

filed by plaintiff Sportsman's Warehouse, Inc. ("SWI").  McGillis asserts that the Court

lacks subject matter jurisdiction over two of the six counts in the complaint ("SWI

Complaint").  In the alternative, McGillis requests that the Court abstain from hearing

those counts.  McGillis also argues that five of the six counts should be dismissed

because they fail to state claims upon which relief can be granted.

The Court finds that it has, at minimum, related-to jurisdiction over the disputed

counts and that abstention is not appropriate in this case.  The Court also finds that

while Count V and a portion of Count VI of the SWI Complaint warrant dismissal, the

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." FED. R. BANKR. P. 7052(a)(3).  Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

remaining counts do not.   Accordingly, the Court will grant the motion in part and deny it in part.

## BACKGROUND

### I.  Factual Background[2]

On March 21, 2009 (the "Petition Date"), SWI filed a voluntary petition for relief under chapter 11 in the United States Bankruptcy Court for the District of Delaware. SWI is a Utah corporation that owns and operates various retails stores selling sporting goods.

#### A.  The Lease Agreement

In March, 2008 (prior to the bankruptcy filing in 2009), SWI and McGillis entered into a lease agreement (the "Lease Agreement"). McGillis is a limited liability company that owns the real property subject to this dispute (the "Property").   Under the Lease Agreement, McGillis agreed to construct a building on the Property, which SWI would thereafter lease and use as a retail store.   The Lease Agreement included a provision (the "Purchase Provision") that granted SWI "the exclusive option and right to purchase the [Property]," which "may be exercised at any time during the [Lease] Term." The Purchase Provision also provided that "[n]otwithstanding any other provision of [the Lease Agreement], [SWI] shall exercise its option to purchase the [Property] and will acquire the [Property] during the [Lease] Term." McGillis thereafter-but prior to the bankruptcy-constructed the building and SWI occupied the Property.

---

[2] The facts set forth herein are derived from the SWI Complaint and the Court's docket.

### B.  The Lease Memorandum

Six months after the execution of the Lease Agreement but still before the bankruptcy, in September 2008, SWI and McGillis executed a lease confirmation memorandum (the "Lease Memorandum"), which provided that SWI would lease the Property until December 25, 2008, and that "[SWI] will purchase the property on or before the Initial Term Expiration Date of December 25, 2008."  SWI did not purchase the Property on or before December 25, 2008 but remained in possession of the Property after that date.

### C.  The Lease Amendment

SWI filed bankruptcy in March, 2009.  Shortly thereafter, SWI and McGillis executed an amendment to the Lease Agreement (the "Lease Amendment") without seeking approval of the Court.  The Lease Amendment extended the Lease Term for one year to March 1, 2010 and reduced the monthly rent.  The Lease Amendment further provided that the Lease Agreement "shall remain in full force and effect and shall remain [otherwise] unaltered," but made no specific reference to the Purchase Provision or its contents.  Finally, the Lease Amendment provided that "[n]othing in [it] constitutes an assumption or rejection of the Lease [Agreement] under Bankruptcy Code Section 365, and [SWI] retains all rights under the Bankruptcy Code to either assume or reject the Lease [Agreement]."

### D.  The Assumption of the Lease and Plan Confirmation

In July, 2009, three months after the signing of the Lease Agreement, SWI filed a motion seeking the authority to assume the Lease Agreement (the "Assumption

Motion"). SWI listed a cure amount of $0.00 in the Assumption Motion. McGillis did not object to the Assumption Motion.

Two weeks later, the Court entered an order (the "Confirmation Order") confirming SWI's second amended joint plan of reorganization (the "Plan"). On the same day, the Court also entered an order granting the Assumption Motion (the "Assumption Order") in which SWI was authorized to assume the Lease Agreement, as amended by the Lease Amendment. The assumption became effective shortly thereafter.

SWI continued to lease and occupy the Property until March 1, 2010, when it vacated the Property on demand by McGillis. SWI never purchased the Property.

## II. Procedural Background

### A. The Montana Litigation

In February, 2010, six months after the entry of the Assumption Order and confirmation of SWI's plan, McGillis filed a complaint against SWI in Montana state court (the "Montana Litigation"). McGillis alleged in the Montana Litigation that SWI was obligated to buy the Property by the end of the Lease, i.e. March 1, 2010, but SWI had breached the Lease Agreement by not purchasing the Property. By its complaint, McGillis requested that the Montana court compel SWI to purchase the Property for $3 million plus 10% interest as well as unpaid rent, and real estate taxes, for a total purchase price of approximately $7.5 million. Alternatively, McGillis requested damages on account of SWI's breach.

**B.  The SWI Adversary**

Shortly after the filing of the Montana Litigation, SWI commenced the SWI Adversary in Delaware, in which SWI asserts six counts against McGillis.

**C.  Motion to Dismiss the SWI Adversary**

By the Motion, McGillis seeks dismissal of the SWI Complaint in its entirety. McGillis asserts that Count I and portions of Count VI should be dismissed for lack of subject matter jurisdiction.  Alternatively, McGillis requests the Court to abstain from hearing these counts.  McGillis also asserts that the Counts II-VI should be dismissed for failure to state claims upon which relief can be granted.

**D.  The Consolidation of the SWI Adversary and the Montana Litigation**

Immediately prior to the filing of the SWI Adversary, at SWI's request the Montana Litigation was removed to the United States District Court for the District of Montana (the "Montana Court").  Thereafter, McGillis filed a motion for remand, or alternatively, abstention. Meanwhile, SWI moved to transfer the Montana Litigation to the Delaware District Court for referral to this Court, or, alternatively, to stay the Montana Litigation in favor of the SWI Adversary.

In August, 2010, the Montana Court adopted the findings and recommendations of the United States Magistrate Judge who had been assigned to resolve the motions filed by McGillis and SWI.  With respect to McGillis's motion for remand, the Montana Court held it has jurisdiction over the Montana Litigation because it is related to SWI's bankruptcy case.  In support, the Montana Court explained that there is a "close nexus" between the issues raised in the Montana Litigation and SWI's bankruptcy case as their

resolution will require a court to interpret the Assumption Order and, if warranted, affect the implementation, consummation, and administration of the Plan by significantly depleting SWI's assets and affecting the distribution scheme approved under the Plan.  With respect to SWI's motion to transfer venue to the District of Delaware for referral to this Court, the Montana Court concluded that transfer was warranted based on its finding of related-to jurisdiction.  The Montana Litigation was therefore transferred to the District of Delaware for referral to this Court.

The Delaware District Court immediately referred the Montana Litigation to this Court.  SWI and McGillis subsequently "agreed to consolidate the adversary proceedings for all pre-trial matters and for trial; provided, however, that the consolidation shall not effect [sic] or alter which party has the burden of proof of any claim, counterclaim or affirmative defense or this Court's jurisdiction over any claim, counterclaim or affirmative defense," which the Court approved.

## LEGAL DISCUSSION

### I.  Subject Matter Jurisdiction

#### A.  The Standard for Evaluating a Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to bring a motion to dismiss for lack of subject matter jurisdiction.[3]  As a rule, the party invoking the federal court's jurisdiction bears the burden of establishing that the Court has the

---

[3] FED. R. CIV. P. 12(b)(1).

requisite jurisdiction.[4]  A motion to dismiss under Rule 12(b)(1) challenges the power of the federal court to hear a claim or case.[5]  "If a court lacks subject matter jurisdiction, it is generally barred from taking any action that goes to the merits of the case."[6]  A defendant may challenge the plaintiff's invocation of federal jurisdiction in one of two ways: (1) to challenge the sufficiency, but not the accuracy, of the facts alleged in the complaint; or (2) to challenge the accuracy of the complaint's factual allegations.[7] Here, McGillis does not challenge the factual allegations in the SWI Complaint. Accordingly, for the purpose of considering the Motion, the Court will presume the veracity of all factual allegations contained in the SWI Complaint.  SWI nonetheless retains the burden of proving that the Court has subject matter jurisdiction over the SWI Adversary.[8]

### B.    Bankruptcy Court Jurisdiction

The jurisdiction of a bankruptcy court extends to four types of matters: (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.[9]  Under 28 U.S.C. § 1334, "the district courts shall have original and exclusive jurisdiction of all cases

---

[4] *See, e.g., Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009).

[5] *See, e.g., Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 788 (M.D. Pa. 2009).

[6] *Shortt v. Richlands Mall Assocs., Inc.*, No. 90-2056, 1990 WL 207354, at *4 (4th Cir. Dec. 19, 1990).

[7] *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006); *Broadhollow Funding, LLC v. Bank of America, N.A. (In re Am. Home Mortg. Holdings, Inc.)*, 390 B.R. 120, 128 (D. Del. 2008).

[8] *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007); *Bayview Plaza Assocs. Ltd. P'ship v. Town of North East, Md. (In re Bayview Plaza Assocs. Ltd. P'ship)*, 209 B.R. 840, 841 (Bankr. D. Del. 1997) (finding that plaintiff bears the burden of showing that court has subject matter jurisdiction over proceeding).

[9] *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 162 (3d Cir. 2004).

under title 11 . . . [and] original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[10]  But, 28 U.S.C. § 157(a) allows the district court to provide that any and all cases under title 11 and any and all proceedings under title 11 that are arise in or are related to a case under title 11 shall be referred to the bankruptcy court.  The Delaware District Court has so provided.

Cases "under" title 11 refer merely to the bankruptcy petition itself.[11] Proceedings "arising under" title 11 refer to the various routine matters in the bankruptcy case and to any proceedings within the case that may raise a disputed legal matter;[12] whether a proceeding "arises under" title 11 depends upon whether the Bankruptcy Code creates the cause of action or provides the substantive rights that are invoked in the proceeding.[13]  Proceedings "arising in" a case under title 11 refer to proceedings that are not based on any right expressly created by title 11 but nevertheless would have no existence outside the bankruptcy case;[14] "claims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case."[15]  The category of proceedings "arising in" bankruptcy cases "includes such things as administrative

---

[10] 28 U.S.C. § 1334(a) and (b).

[11] *See, e.g.*, *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d. Cir. 1991).

[12] *See, e.g.*, *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co).*, 930 F.2d 1132, 1141 n.14 (6th Cir. 1991).

[13] *Halper v. Halper*, 164 F.3d 830, 836-37 (3d Cir. 1999).

[14] *See, e.g.*, *Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1178 (3d Cir. 1996).

[15] *Id.*

matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens."[16]

Finally, whether a proceeding is "related to" a bankruptcy case depends on whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[17]  An action is related to the bankruptcy case "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which, in any way, impacts upon the handling and administration of the bankruptcy estate."[18]  The United States Supreme Court has made clear that the critical import of the *Pacor* test is that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."[19] Furthermore, "whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding [depends on] whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit."[20]  "A key word in this test is 'conceivable.' Certainty, or even likelihood, is not a requirement."[21]

However, after a debtor's reorganization plan is confirmed, the bankruptcy court's jurisdiction necessarily diminishes because the "bankruptcy estate" ceases to

---

[16] *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006).

[17] *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984, 994 (3d. Cir 1984)

[18] *Id.*

[19] *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).

[20] *In re Federal–Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002), *cert. denied*, 537 U.S. 1148 (2003). *See also In re Combustion Engineering, Inc.*, 391 F.3d 190, 232 (3d Cir. 2004) ("Moreover, any indemnification claims against Combustion Engineering resulting from a shared production facility would require the intervention of another lawsuit to affect the bankruptcy estate, and thus cannot provide a basis for 'related to' jurisdiction.").

[21] *In re Marcus*, 943 F.2d at 264.

exist, but "under traditional *Pacor* analysis, bankruptcy jurisdiction will not extend to a dispute between non-debtors unless the dispute creates 'the logical possibility that the estate will be affected.'"[22]  In *Resorts*, the Third Circuit held that in the post-confirmation context, a "close nexus" between the claim and the bankruptcy proceeding must be established to invoke the bankruptcy court's "related-to" jurisdiction.[23]   Under *Resorts*, claims that do not "affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan, or where there is no litigating or liquidating trust involved," are unlikely to have the requisite "close nexus" necessary for asserting bankruptcy court jurisdiction.[24]

## C.   The Court Has Jurisdiction Over Counts I and VI

In Count I, SWI seeks a declaratory judgment that the Lease Agreement does not contain an enforceable purchase obligation because the Purchase Provision actually provides SWI with an option to purchase the Property at its discretion.

By Count VI, SWI asserts several defenses against McGillis's claims:

(1) that the Lease Amendment is void under 11 U.S.C. § 363 to the extent that it is deemed to be a mandatory purchase obligation;

(2) that the doctrines of estoppel, waiver, and unclean hands bar McGillis's claims; and

(3) that McGillis's claim should be reduced for its failure to mitigate damages.

---

[22] *Binder*, 372 F.3d at 165 (quoting *In re Federal-Mogul*, 300 F.3d at 380) (internal quotation marks omitted).

[23] *Id.* at 166-67.

[24] *Id.* at 167.

McGillis argues that this Court does not have the jurisdiction over Count I and certain portions of Count VI, because these matters do not arise under the Bankruptcy Code, and that they neither arise in nor are related to SWI's bankruptcy case. In support of its assertion, McGillis argues that the dispute over the meaning of the Lease Agreement, as amended, does not give rise to any claims that are created by or determined under a specific provision of the Bankruptcy Code. McGillis further argues that the claims relating the Lease Agreement have not arisen in the administration of SWI's bankruptcy case, nor are they such claims that would not have arisen absent SWI's bankruptcy case. McGillis maintains therefore that resolution of the parties' dispute requires only an interpretation of the Lease Agreement, the Lease Amendment, and specifically, the Purchase Provision. However, in the post-confirmation context, McGillis argues that state law governs such contract interpretation, such that there is no requisite "close nexus" to SWI's bankruptcy case, which is necessary to establish, at minimum, this Court's "related-to" jurisdiction.

SWI, on the other hand, argues that the resolution of Counts I and VI are directly tied to the Plan and to this Court's orders, which should be sufficient to support SWI's allegations concerning this Court's subject matter jurisdiction. Specifically, SWI asserts that Counts I and VI are core issues that "arise in" SWI's bankruptcy case because resolving the parties' dispute ultimately requires an interpretation of the Assumption Order. SWI further contends that the resolution of this dispute may directly affect the administration of SWI's Plan.

As a preliminary matter, the Court (like all courts) has jurisdiction to determine whether it has subject matter jurisdiction over these counts.[25]  For the reasons stated below, the Court concludes that it has, at minimum, "related-to" jurisdiction over Counts I and VI.[26]  Because the Third Circuit has held that the Court's jurisdiction over each count in a complaint must be established on a count-by-count basis,[27] the Court will discuss its jurisdictional basis for each count in turn.

### 1.  Count I "Relates To" SWI's Bankruptcy Case

With respect to Count I, the Court concludes that it has, at minimum, "related-to" jurisdiction to hear the claim.  Although at its essence Count I requests the Court to specifically interpret the Purchase Provision in the Lease Agreement, which the Court must do in accordance with Montana state contract law, this mandate does not necessarily divest the Court of "related-to" jurisdiction.  The Lease Agreement was assumed in the course of SWI's bankruptcy proceedings and, although SWI's Plan has now been confirmed, the interpretation of the Lease Agreement may still affect the Plan. If the Purchase Provision is deemed a mere option to purchase the Property, then SWI will be determined to have no further liability to McGillis.  However, if the Purchase Provision is deemed to impose a mandatory purchase obligation, and if, as McGillis contends, such provision is deemed to have been revived by the Lease Amendment, then McGillis may be entitled to post-petition breach damages on account of SWI's

---

[25] *See, e.g.*, *Chicot*, 308 U.S. at 376-77.

[26] For the avoidance of doubt, the Court also finds that it has jurisdiction over Counts II, III, IV, V, and VI of the SWI Complaint under 28 U.S.C. §§ 1334 and 157(b)(1), that these counts are core proceedings under 28 U.S.C. § 157(b)(2)(A), (M) and (L), and that venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

[27] *Halper*, 164 F.3d at 839.

failure to buy the Property.  It is therefore conceivable that the resolution of Count I will have an impact on SWI's bankruptcy case.

If SWI is deemed to have an unsatisfied obligation to McGillis on account of the Lease Agreement, as amended and assumed, then this obligation would have arisen contractually, such that an intervening lawsuit would not be required for establish McGillis's entitlement.  Thus, McGillis would be entitled to file its post-petition claim in SWI's bankruptcy and to have it resolved in accordance with the claims resolution process, and it is conceivable that its claim would be allowed.  To the extent that McGillis's claim would be allowed, it would likely affect the administration of SWI's Plan and the distribution scheme provided under the confirmed Plan.  Accordingly, Count I is sufficiently "related to" SWI's bankruptcy case for this Court to exercise jurisdiction over it.

> **2. Count VI Arises Under the Bankruptcy Code and Arises In SWI's Bankruptcy Case, and At Minimum, Is Related to the Bankruptcy Case**

With respect to Count VI, the Court finds that subject matter jurisdiction may be properly grounded in the fact that SWI's defenses asserted in this count "arise under" the Bankruptcy Code or "arise in" SWI's bankruptcy case, but at minimum, are "related to" SWI's bankruptcy case.  Resolution of the various defenses that SWI asserts in Count VI ultimately requires the Court to interpret, validate, and enforce the Assumption Order.  Well-settled law supports this Court's jurisdiction to interpret its

own orders.[28]  As discussed in further detail below, the Court concludes that whether (i) SWI properly assumed the Lease Agreement; (ii)  McGillis has a valid cure claim that is not otherwise barred; (iii) the Assumption Motion authorized SWI to assume the Lease Agreement as amended, even if the Lease Amendment revived the Purchase Provision; and (iv) McGillis may have a post-petition claim are all issues that involve substantive rights under title 11.  Moreover, whether the Court could have authorized the assumption of the Lease Agreement, as amended, to the extent that it is deemed to include the disputed mandatory purchase obligation, implicates the integrity of the Assumption Order.  After all, as SWI correctly asserts, the Court would not have been authorized to enter the Assumption Order if it is deemed that such order would have violated the Bankruptcy Code.

### D.   The Law of the Case Doctrine Favors Jurisdiction In This Court

In addition, the law of the case doctrine and the procedural posture of the Montana Litigation both also favor the retention of jurisdiction in this Court over Counts I and VI.  As noted above, the Montana Litigation has been transferred to this District, referred to this Court, and thereafter consolidated with and subsumed into the SWI Adversary.  Given that the interpretation of the Lease Agreement, especially the Purchase Provision, will principally determine which party prevails in the claims

---

[28] *See Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 2205 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *In re TWA Inc. Post Confirmation Estate*, 2007 WL 2757148, at *3 (Bankr. D. Del. Sept. 21, 2007) (citing *Centennial & Allegheny Univ. Hosps.-East Tenet Healthsystem Phila., Inc. v. Nat'l Union of Hosp. & Health Care Emps., AFSCME, AFL CIO Dist.*, 383 F.3d 169, 175-76 (3d Cir. 2004)); *Amphenol Corp. v. Shandler* (*In re Insilco Techs., Inc.*), 351 B.R. 313, 319-20 (Bankr. D. Del. 2006) ("Bankruptcy Courts have subject matter jurisdiction to interpret and enforce their own orders.").

asserted by each against the other, the determination by the Montana Court that the Montana Litigation is sufficiently related to SWI's bankruptcy case is significant. The Third Circuit has specifically instructed courts to "refrain from re-deciding issues that were resolved earlier in the litigation."[29] Therefore, a decision by this Court that certain counts in the SWI Complaint that are substantively identical to those in the Montana Litigation are not sufficiently related to the SWI bankruptcy case so as to establish this Court's jurisdiction would effectively require the Court to re-decide an issue that has already been decided by the Montana Court.

The law of the case doctrine "is not a fixed rule that prevents a federal court from determining its own subject-matter jurisdiction in a given case,"[30] and is inapplicable in certain situations.[31] However, it is especially important in transfer decisions, which if ignored by transferee courts, could "send litigants into a vicious circle of litigation."[32] Such a result could "undermine public confidence in our judiciary, squander private and public resources, and commit far too much of [the Supreme Court's] calendar to the resolution of fact-specific jurisdictional disputes."[33] To prevent this "vicious circle," the Supreme Court instructs that transfer decisions should be ignored only in rare

---

[29] *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Electrons, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997).

[30] *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 591 F.3d 164, 174 (3d Cir. 2009) (citing *Baca v. King*, 92 F.3d 1031, 1035 (10th Cir. 1996)).

[31] The law of the case does not apply in the following three situations: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169-70 (3d Cir. 1982).

[32] *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).

[33] *Id.* at 818-19.

circumstances: "Under law of the case principles, if the transferee court can find the transfer decision *plausible*, its jurisdictional inquiry is at an end."[34]

Thus, the effect of the Montana Court's transfer decision is that the Court's jurisdictional inquiry may be at an end so long as the Montana Court's decision to transfer the Montana Litigation is "plausible."[35]  As noted above, at their cores, the Montana Litigation and the SWI Adversary concern the same dispute and would have to therefore yield consistent results, even if these two actions were not consolidated. Essentially, the issue is whether SWI was contractually obligated to purchase the Property from McGillis.  The Montana Court has decided that McGillis's claims against SWI pursuant to the Purchase Provision are sufficiently related to SWI's bankruptcy case because their resolution would require the interpretation of this Court's orders and could affect SWI's bankruptcy case.  The foregoing discussion concerning the likelihood that a court will need to interpret the Assumption Order to resolve the parties' claims and defenses against each other, and the potential impact on SWI's bankruptcy case of the resolution of McGillis's claims against SWI in favor of McGillis, allows this Court to conclude that the Montana Court's decision to transfer the Montana Litigation is sufficiently plausible to withstand further scrutiny.  Accordingly, the Court concludes that it has the requisite subject matter jurisdiction over both Counts I and VI.

---

[34] *Id*. at 819 (emphasis added).

[35] The Third Circuit has construed *Christianson* narrowly, limiting its application to transfer cases.  *See Pub. Interest Research Grp.*, 123 F.3d at 118 ("[W]e think *Christianson's* commentary on the law of the case and jurisdiction applies only within the context of transfer cases.").  That is no limitation here inasmuch as the Montana Litigation is a transferred case.

## II.  Abstention Under 11 U.S.C. § 1334(c) is Not Warranted

Having determined that it has subject matter jurisdiction over Counts I and VI of the SWI Complaint, the Court now considers McGillis's request for abstention.  For the reasons discussed below, the Court concludes that neither mandatory abstention under 11 U.S.C. § 1334(c)(2) nor permissive abstention under 11 U.S.C. § 1334(c)(1) are warranted under the circumstances in this case.

### A.   Mandatory Abstention

Mandatory abstention may only be warranted if each of the following six requirements are satisfied: (i) the motion to abstain is timely; (ii) the action is based upon a state law claim or cause of action; (iii) an action has been commenced in state court; (iv) the action can be timely adjudicated in state court; (v) there is no independent basis for federal jurisdiction which would have permitted the action to be commenced in federal court absent bankruptcy; and (vi) the matter is non-core and is only "related to" a case under title 11.[36]  A party moving for mandatory abstention "must meet all the requirements of mandatory abstention for relief to be granted."[37]  The purpose of mandatory abstention is "to require federal courts to defer to the state courts to handle lawsuits which, although 'related to' a bankruptcy, can be promptly resolved in state court without interfering with the proceedings pending in the federal courts."[38]

---

[36] *Stoe*, 436 F.3d at 213; *Celotex*, 514 U.S. at 322; *In re Holiday RV Superstores, Inc.*, 362 B.R. 126, 130 (Bankr. D. Del. 2007); *LaRoche Indus. v. Orica Nitrogen LLC (In re LaRoche Indus.)*, 312 B.R. 249, 252-253 (Bankr. D. Del. 2004).

[37] *Great Am. Ins. Co. v. Mobile Tool Int'l, Inc. (In re Mobile Tool Int'l, Inc.)*, 320 B.R. 552, 556 (Bankr. D. Del. 2005).

[38] *Beightol v. UBS Painewebber (In re Global Crossing, Ltd. Sec. Litig.)*, 311 B.R. 345, 349 (S.D.N.Y. 2003).

Here, the procedural posture of the Montana Litigation means that it is unlikely Counts I and VI can be "timely adjudicated in state court."  As discussed earlier, the Montana Litigation has been removed from Montana state court, transferred to this District, subsequently referred to this Court, and thereafter, consolidated with the SWI Adversary.  The record before the Court reflects that there are no pending motions for withdrawal of the reference, re-transfer, or remand.[39]  The Court therefore has significant concerns as to whether the claims raised by McGillis and SWI against each other, both in the SWI Adversary and the Montana Litigation, can be timely adjudicated in any other forum at this time.  Accordingly, the Court concludes that mandatory abstention is inappropriate in this case.

### B.  Permissive Abstention

Permissive abstention may nonetheless be appropriate where the requirements for mandatory abstention have not been met: "[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."[40]  The procedural posture of the Montana Litigation, as discussed above, militates against even discretionary abstention.  Simply put, there is no state court proceeding that is available to resolve the issues in Counts I and VI because the Montana Litigation has been consolidated with

---

[39] The mere removal of a state court action does not negate the potential applicability of the mandatory abstention doctrine.  The Third Circuit has held that "[a] removed case 'is commenced' in the state court and satisfies that requirement."  *Stoe*, 436 F.3d at 213-16 ("'Is commenced' simply cannot reasonably be read to require both commencement and ongoing pendency in state court.").

[40] 11 U.S.C. § 1334(c)(1).

the SWI Adversary.  The Bankruptcy Court in this District has previously held that "[a]bstention can exist only where there is a parallel proceeding in state court.  That is, inherent in the concept of abstention is the presence of a pendant state action in favor of which the federal court must, or may, abstain."[41]  The Court therefore concludes that, the consolidation of the Montana Litigation into the SWI Adversary effectively precludes the application of the permissive abstention doctrine.

## III. Sufficiency of the Allegations in SWI Complaint

### A.   The Rule 12(b)(6) Standard

The standard governing a motion under Rule 12(b)(6) is well known and need not be repeated in detail here.

It is suffice to say that the Third Circuit has instructed this Court to "conduct a two-part analysis.  First the factual and legal elements of a claim should be separated.  The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."[42]  The court "must then determine whether the facts

---

[41] *In re Cable & Wireless USA, Inc.*, 331 B.R. 568, 576 (Bankr. D. Del. 2005) (quoting *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers (In re Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers Union Local 890)*, 124 F.3d 999, 1009 (9th Cir. 1997) (citations omitted)).

[42] *Fowler*, 578 F.3d at 210-11.  *See also Twombly*, 550 U.S. at 555 (holding that a court *must* take the complaint's allegations as true, no matter how incredulous the court may be); *Iqbal*, 129 S. Ct. at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . When there are well-plead factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007); *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004).  The Court may also consider documents attached as exhibits to the Complaint and any documents incorporated into the Complaint by reference.  *End of the Road Trust v. Terex Corp. (In re Fruehauf Trail Corp.)*, 250 B.R. 168, 183 (Bankr. D. Del. 2000) (*citing PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  "[I]f the allegations of [the] complaint are contradicted by documents made a part thereof, the document controls and the Court need not accept as true the allegations of the complaint."  *Sierra Invs., LLC v. SHC, Inc. (In re SHC, Inc.)*, 329 B.R. 438, 442 (Bankr. D. Del. 2005).  *See also Sunquest Info. Sys., Inc. v. Dean Whitter Reynolds, Inc.*, 40 F. Supp. 2d 644, 649 (W.D.Pa. 1999) ("In the event of a factual discrepancy between the pleadings and the attached exhibit, the exhibit controls.") (citations omitted).

alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."[43]   The Third Circuit has further instructed that "[s]ome claims will demand relatively more factual detail to satisfy this standard, while others require less."[44]

### B.   The Parties' Positions

SWI generally pleads that it has no liability to McGillis on account of the Lease Agreement.  As discussed above, SWI asserts in Count I that the Purchase Provision in the Lease Agreement grants SWI an option to purchase the Property, and does not impose a mandatory purchase obligation, as McGillis maintains is does.  In the event that the Court finds in favor of McGillis on this issue, SWI pleads several alternative counts.

By Count II, SWI asserts that if the Purchase Provision were deemed a mandatory purchase obligation, the Lease Agreement was a disguised financing arrangement that could not have been assumed by SWI without violating the Bankruptcy Code.

By Count III, SWI asserts that if the Lease Agreement is deemed a financing arrangement, then McGillis would be deemed under the plan to be a creditor with a "miscellaneous secured claim" that is secured by the Property.  Because the Plan provided that any such claim would be deemed fully satisfied if SWI relinquished the

---

[43] *Fowler*, 578 F.3d at 211 (internal quotations omitted) ("[A] complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." (citations omitted)).  "The plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim." *Buckley*, 2008 Bankr. LEXIS 2338, at *13.

[44] *In re Ins. Brokerage Antitrust Litig.*, 2010 U.S. App. LEXIS 17107, 46-47 n. 18 (3d Cir. Aug. 16, 2010).  *See also Arista Records LLC v. Doe*, 604 F.3d 110, 120-21 (2d Cir. 2010) (stating that *Twombly* and *Iqbal* require factual amplification where needed to render a claim plausible, not pleadings of specific evidence or extra facts beyond what is needed to make a claims plausible).

collateral to the creditor, SWI argues that it fully satisfied McGillis's claims by vacating the Property and relinquishing possession to McGillis.

By Count IV, SWI seeks a declaratory judgment that McGillis's failure to timely object to the Assumption Motion and assert its right to a cure payment bars McGillis's current claims against SWI under the Lease Agreement.

By Count V, SWI requests that the Court also vacate the Assumption Order pursuant to Rule 60(b) on the ground that McGillis concealed from the Court and from SWI's creditors that the Lease Agreement, as assumed, obligated SWI to purchase the Property at the end of the Lease Term.

Finally, by Count VI, SWI asserts that (1) the Purchase Provision is void to the extent that it was assumed as part of the Lease Agreement, (2) the doctrines of waiver, estoppels, and unclean hands bar McGillis's claim for damages, and (3) any damages awarded to McGillis must be reduced because McGillis failed to mitigate its damages.

By the Motion, McGillis argues that SWI has failed to adequately plead its alternative claims in Counts II through VI, and that these counts should therefore be dismissed pursuant to Rule 12(b)(6).[45]   To survive the Motion, the SWI Complaint must contain sufficient factual allegations from which the Court could conclude that SWI is entitled to the relief that it seeks in Counts II through VI.   The Court addresses the

---

[45] SWI argues that the Court should infer from McGillis's failure to move for dismissal of Count I and the remaining portions of Count VI that McGillis chose not to pursue such dismissal because it would not have prevailed.   However, the Court concludes that such an inference is inappropriate.   McGillis has moved for dismissal of these counts under Rule 12(b)(1) for lack of subject matter jurisdiction. Jurisdiction is a threshold issue.   In the event that McGillis does not prevail, it may still pursue dismissal on Rule 12(b)(6) grounds.   Because Rule 12(h)(2) allows McGillis to assert that SWI has failed to state a claim upon which relief can be granted at any time before trial, McGillis's decision to not do so at this stage is therefore neither fatal nor preclusive.

sufficiency of each of these counts in turn.  At its core, however, the SWI Complaint alleges that, if the Lease Agreement is deemed to include a mandatory purchase provision, then it should be deemed a "loan," "debt financing," or "financial accommodations" agreement, within the meaning of 11 U.S.C. § 365(c)(2).  The Court therefore precedes its assessment of Counts II through VI with a discussion of whether SWI has sufficiently alleged that the Lease Agreement was improperly assumed in contravention of § 365(c)(2), to the extent that the Lease Agreement is deemed to contain a mandatory purchase obligation.

### C.   Whether § 365(c)(2) Could Bar Assumption of the Lease Agreement

#### 1.   The § 365(c)(2) Prohibition

The Bankruptcy Code provides that a trustee "may not assume or assign any executory contract or unexpired lease of the debtor" if "such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor."[46]  "[T]he purpose behind § 365(c)(2) is to avoid forcing a pre-petition creditor to continue to provide financing to a debtor."[47]  However, courts are instructed to "strictly construe the terms 'loan,' 'debt financing' and 'financial accommodation' narrowly."[48]  Here, the Lease Agreement does

---

[46] 11 U.S.C. § 365(c)(2).

[47] *In re Boscov's, Inc.*, No. 08-11637 (KG), 2008 WL 4975882, at *1 (Bankr. D. Del. Nov. 21, 2008) (citing *In re Best Products Co.*, 210 B.R. 714 (Bankr. E.D. Va. 1997)).  The legislative history of this prohibition explains that "[t]he purpose of this subsection is to make it clear that a party to a transaction which is based upon the financial strength of a debtor should not be required to extend new credit to the debtor."  S. REP. 95-989, 95th Cong., 2d Sess. 58-59 (1978) (emphasis added).

[48] *In re Emerald Forest Constr.*, 226 B.R. 659, 664 (Bankr. D. Mont. 1998); *Chase Manhattan Bank v. Iridium Africa Corp.*, No. Civ. A. 00-546, 2004 WL 323178, at *4 (D. Del. Feb. 13, 2004).

not make a "loan" to SWI.  Whether the Lease Agreement is non-assumable therefore turns on whether it can be characterized as a "debt financing" or "financial accommodations" contract within the scope of § 365(c)(2).

Third Circuit case law indicates that "there is no way that a debtor can assume [a financing] agreement and thus compel its lender to continue to advance funds during reorganization."[49]  "[C]ourts define the term 'financial accommodations' narrowly, as 'the extension of money or credit to accommodate another.'"[50]  A lease may qualify as a financial accommodation if it imposes upon the purported landlord and seller the obligation to make a significant investment in the real property for the purpose of developing or improving it for the benefit of the purported tenant and eventual buyer.[51] A contract is not a "financial accommodations" contract if the extension of credit is merely incidental to the broader contractual arrangement involving the debtor.[52]  The Seventh Circuit Court of Appeals has further explained that "[§ 365(c)] asks whether the contract as a whole is a 'financial accommodation,' not whether one clause could be so characterized."[53]  A contract may not be assumed therefore when its "principal purpose" is "to extend financing to or guarantee the financial obligations of the

---

[49] *Watts v. Pa. Housing Fin. Co. (In re Watts)*, 876 F.2d 1090, 1095 (3d Cir. 1989).

[50] *Nat'l Bank v. Thomas B. Hamilton Co. (In re Thomas B. Hamilton Co.)*, 969 F.2d 1013, 1019 (11th Cir. 1992) (internal quotation marks omitted) (citation omitted).

[51] *Dean v. Postle Enter., Inc. (In re Postle Enter., Inc.)*, 48 B.R. 721, 723 (Bankr. D. Ariz. 1985) (denying lease assumption for violating the 11 U.S.C. 365(c)(2) prohibition because landlord improved property for tenant's benefit).

[52] *Nat'l Bank*, 969 F.2d at 1019.

[53] *In re United Airlines, Inc.*, 368 F.3d 720, 724 (7th Cir. 2004).

debtor."[54]   The assumption of leases, which may contain some provisions that could be viewed as short-term loans, are generally not contested on § 365(c)(2) grounds.[55]

## 2.  The Application of § 365(c)(2) to the Lease Agreement

Here, the Lease Agreement appears on its face to be a contract between SWI and McGillis pursuant to which McGillis has agreed to lease the Property to SWI for a predetermined monthly fee.  SWI does not contest this interpretation of the Lease Agreement, but alternatively argues that if the Lease Agreement indeed mandates that SWI purchase the Property by the end of the Lease Term (as McGillis contends it does), then the Lease Agreement must be reclassified as a "financing arrangement."  Third Circuit law suggests that "a lessee's contractual obligation to purchase the leased property at the end of the term" operates to "convert what is normally a lease into what is really a loan transaction, with the lessor providing property of a certain value in exchange for the repayment of that value plus a fixed yield."[56]

Montana state law, which governs the Lease Agreement, yields the same result. Under the Uniform Commercial Code, as adopted in Montana, "[a] transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee and . . . the lessee is bound to . . .

---

[54] *Nat'l Bank*, 969 F.2d at 1019.

[55] *In re United*, 368 F.3d at 724 ("[A]lmost every lease and other executory contract has some provision that could be characterized as a short-term loan to one side or the other. . . . Doubtless this is why no one (to our knowledge) has argued that debtors cannot assume leases and sales contracts.").

[56] *Montgomery Ward Holding Corp. v. Meridian Leasing Corp. (In re Montgomery Ward Holding Co.)*, 326 F.3d 383, 387 & n.4 (3d Cir. 2003).

become the owner of the goods."[57]  The official comments to this provision clarify that "[a] security interest is created only if the option price is nominal and the conditions stated in the introduction to the second paragraph of this subsection are met."[58]

The Court concludes that the factual allegations in the SWI Complaint are sufficient to support a finding that the Lease Agreement, in the event that it is deemed to include a mandatory purchase obligation, actually provides debt financing or financial accommodations, within the scope of § 365(c)(2), and would therefore not be a lease capable of being assumed.  SWI has alleged that the Lease Agreement would have obligated it to purchase the Property by the end of the lease term for "an amount equal to the sum of (a) Landlord's Total Costs and (b) Five Hundred Thousand Dollars ($500,000.00)," for a total purchase price of approximately $7.5 million.[59]  SWI further alleges that by constructing the building, McGillis financed the improvement of the Property for use by SWI, and that the rent that was agreed upon between the parties was the result of a complex calculation of McGillis's costs, a portion of which SWI was to pay over the course of the Lease Term, and the remainder by virtue of the purchase price.[60]  Accepting the truth of all factual allegations in the SWI Complaint and making all reasonable inferences in favor of SWI, the Court finds that the Lease Agreement

---

[57] MONT. CODE ANN. § 30-1-211(2).

[58] *Id*. § 30-1-211 cmt. n.2.  McGillis argues that SWI's reliance upon personal property law is misguided.  Faced with the same issue, the Seventh Circuit stated that "[it] cannot imagine any reason why state law would define a 'true lease' for personal property while federal law would supply the definition for real property."  *United Airlines, Inc. v. HSBC Bank USA, N.A.*, 416 F.3d 609, 615 (7th Cir. 2005).  This Court concurs with the reasoning of *United Airlines* court.

[59] SWI Complaint ¶ 48 (quoting Lease Agreement) (internal quotation marks omitted).

[60] *Id*. ¶ 48 (citing Lease Agreement).

could be determined to have provided for financial accommodations by McGillis for SWI, in that McGillis invested its capital and financed the construction of the building on the Property that SWI rented, based on the understanding that SWI would be bound to eventually purchase the Property.  The Court could also conclude that certain asserted provisions in the Lease Agreement operated to convert the agreement into a long-term installment sales contract, whereby McGillis agreed to accept periodic rent payments calculated with the purchase price in mind, and then a balloon payment for the balance of the purchase price at the end of the Lease Term.  At this stage, therefore, SWI has adequately alleged that if the Lease Agreement is determined to obligate SWI to purchase the Property, then this agreement could then be found to be a non-assumable contract under § 365(c)(2).

### D.  Counts II and V:   Grounds to Vacate the Assumption Order Under Rule 60(b)

In Counts II and V, SWI seeks an order of the Court vacating the Assumption Order.   Federal Rule of Civil Procedure 60(b), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 9024, permits a party to obtain relief from "a final judgment, order, or proceeding."[61]  The grounds that may justify such relief in this case include, inter alia, "mistake, inadvertence, surprise, or excusable neglect," "fraud, misrepresentation, or misconduct," or "any other reason that justifies relief."[62]   The Third Circuit has stated that "[t]he power of a court to invoke Rule 60(b)

---

[61] FED. R. CIV. P. 60(b).

[62] FED. R. CIV. P. 60(b)(1), (3), (6).   A Rule 60(b) motion must be made within a reasonable time, and generally no more than a year after the entry of the judgment, order, or proceeding from which the

to vacate its own earlier judgment is unquestioned."[63]   However, when a court is considering its own judgment, "extraordinary circumstances" must be present to justify the use of the Rule 60(b)(6) catch-all provision to vacate the judgment.[64]

Here, SWI asserts that it is entitled to Rule 60(b) relief on the grounds that (1) the Lease Agreement was mistakenly assumed if it is determined that it could not have been properly assumed under the Bankruptcy Code, (2) McGillis improperly concealed the true nature of the Lease Agreement, and (3) extraordinary circumstances warrant this relief.

### 1.  Rule 60(b)(1) Relief Based Upon SWI's Mistake (Count II)

SWI alleges that it had mistakenly moved to assume the Lease Agreement. Specifically, SWI alleges that if it had known that the Lease Agreement contained a mandatory purchase obligation, then "the Agreement would have been rejected and the store closed, like many other store leases that were rejected under the Plan."[65]   In support of its assertion, SWI explains that "the Billings, Montana store at the Property was marginally profitable, if at all, and adding a requirement to purchase the Property for over $7 million very clearly makes it unprofitable."[66]

---

movant seeks relief. FED. R. CIV. P. 60(c).  Here, the Assumption Order was entered on July 30, 2009, and SWI filed its request for Rule 60(b) relief under Counts II and V in the SWI Complaint on March 17, 2010. McGillis does not contest the timeliness of SWI's request.

[63] *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008).

[64] *Id.* at 251, 255 ("We have explained that a showing of extraordinary circumstances involves a showing that without relief from the judgment, "an 'extreme' and 'unexpected' hardship will result.") (citation omitted).

[65] SWI Complaint ¶ 4.

[66] *Id.* ¶ 4.

McGillis argues that vacating the Assumption Order on this ground is not warranted because "Rule 60(b)(1) relief is not available for a party who simply misunderstands the legal consequences of his deliberate acts."[67] The Court, however, finds that SWI did not necessarily misunderstand the Lease Agreement, as McGillis contends, because the Lease Agreement that was assumed by SWI is rife with ambiguities. SWI has alleged that the Lease Agreement states both that SWI has "the exclusive option and right to purchase" and that SWI "shall exercise its option to purchase" the Property, and includes other provisions that collectively make it unclear whether SWI ultimately must buy the Property or has merely the option to buy it at its discretion.[68] SWI alleged that the Lease Amendment is equally unclear because it purports both to renew the Lease Agreement in its entirety, along with the Purchase Provision, and to preserve SWI's right to nonetheless assume or reject the Lease Agreement in the course of its bankruptcy case, even though the latter right would be rendered meaningless in light of the obligation to purchase the Property, which McGillis has alleged is contained within the Lease Agreement and Lease Amendment.[69]

Assuming the veracity of the allegations in the SWI Complaint, the Court finds that SWI has sufficiently alleged that, were it found that the Lease Agreement, as amended and assumed, obligated SWI to purchase the Property before the end of the Lease Term, then SWI had mistakenly moved to assume the Lease Agreement. The

---

[67] *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 577 (10th Cir. 1996).

[68] SWI Complaint ¶¶ 15-18.

[69] *Id.* ¶¶ 20-22.

Court thus concludes that SWI has adequately pled its entitlement to Rule 60(b)(1) relief based upon SWI's alleged mistake.[70]

### 2. Rule 60(b)(3) Relief Based Upon McGillis's Concealment (Count V)

SWI argues that it is also entitled to Rule 60(b) relief on the ground that McGillis engaged in actionable misconduct by allegedly concealing the true nature of the Lease Agreement. "To prevail on a Rule 60(b)(3) motion, 'the movant must show that the adverse party engaged in fraud or other misconduct, and this conduct prevented the movant from fully and fairly presenting his case.'"[71] "Failure to disclose or produce evidence requested in discovery can constitute Rule 60(b)(3) misconduct."[72] The alleged fraud or misconduct must be proven by clear and convincing evidence.[73]

Here, the Court concludes that SWI has not alleged any facts to substantiate its charge of misconduct against McGillis and, thus, the Count will be dismissed. SWI alleges that McGillis did not disclose to SWI or the Court that "the short-term lease [SWI assumed] was followed by a purchase requirement," and that SWI, its creditors,

---

[70] McGillis argues that SWI should be judicially estopped from asserting at this stage that the Lease Agreement may not have been assumed under § 365, given that SWI previously represented to the Court that this contract is assumable. The doctrine of judicial estoppel is intended to protect the Court from litigants who attempt to play "fast and loose with the courts." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1995). *See also Mintze v. Am. Gen. Fin. Servs. (In re Mintze)*, 434 F.3d 222, 232 (3d Cir. 2006) (finding that judicial estoppel is intended to protect courts not litigants). Here, SWI consistently maintains that the disputed Purchase Provision does not impose a mandatory purchase obligation on SWI, such that McGillis can have no valid or enforceable claim against SWI on account of this provision in the Lease Agreement. However, in the event that the Purchase Provision is interpreted in favor of McGillis, SWI is well within its rights under Federal Rule of Civil Procedure 8 to plead alternative grounds in support of its argument against McGillis's claims.

[71] *U.S. Bank Nat'l Assoc. v. Wilmington Trust Bank (In re Spansion, Inc.)*, 426 B.R. 114, 124 (Bankr. D. Del. 2010) (quoting *Linear Tech. Corp. v. Monolithic Power Sys., Inc.*, C.A. No. 06-476 GMS, 2009 WL 3805567, *3 (D. Del. Nov. 12, 2009)). *See also Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983).

[72] *Stridiron*, 698 F.2d at 207 (citation omitted).

[73] *U.S. Bank*, 426 B.R. at 124 (citation omitted).

and the Court "lacked knowledge of this material fact."[74]   SWI further alleges that it assumed the Lease Agreement "without any knowledge or understanding that McGillis might claim that the Purchase [Provision] was a valid and enforceable mandatory purchase obligation," and that "any assumption of the alleged obligation to purchase was premised upon material misstatements or omissions."[75]   Assuming the veracity of these allegations and making all reasonable inferences in favor of SWI, the Court still cannot conclude that SWI has sufficiently alleged that McGillis engaged in any misconduct.   At best, SWI has pled that the parties may have been operating under different (and contradictory) assumptions about SWI's obligations under the assumed Lease Agreement.   However, parties to a contract are charged with knowledge of its contents.[76]   The fact that McGillis did not articulate its understanding of the Lease Agreement does not support SWI's charge of concealment because the Court presumes that, upon entry into the Lease Agreement, both parties could rightfully assume that their interpretations of the agreement were in congruence.   Accordingly, Rule 60(b)(3) relief is not warranted and Count V will be dismissed.

---

[74] SWI Complaint ¶¶ 76, 80.

[75] *Id.* ¶¶ 76, 79.

[76] *VGS, Inc. v. Castiel*, 2004 WL 876032, at *6 (Del. Ch. Apr. 22, 2004); *Wolf v. Magness Const. Co.*, 1995 WL 571896, at *2 (Del. Ch. Sept. 11, 1995).  *See also J.A. Moore Const. Co. v. Sussex Asscs. Ltd. P'ship*, 688 F. Supp. 982, 989-91 (D. Del. 1988).

### 3. Rule 60(b)(6) Relief Based Upon Extraordinary Circumstances (Count II)

The Third Circuit has stated that Rule 60(b) "should be liberally construed for the purpose of doing substantial justice."[77] However, the Supreme Court cautions that "only truly 'extraordinary circumstances' will permit a party successfully to invoke the 'any other reason' clause of § 60(b)."[78]  "This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved."[79]  Therefore, "relief under Rule 60(b) is available only under such circumstances that the overriding interest in the finality and repose of judgments may properly be overcome."[80]

Here, SWI asserts that Rule 60(b)(6) relief is warranted because it asserts that the Court would not have authorized the assumption of the Lease Agreement if this agreement clearly included a mandatory purchase obligation.  Specifically, SWI alleges that if the Lease Agreement was a "financing agreement," then "the Court entered its Assumption Order while operating under a mistake at to the nature of the Agreement."[81]  Under similar circumstances, the Ninth Circuit found that "[t]he bankruptcy court correctly found that extraordinary circumstances justified reconsidering the assumption order because the order erroneously granted assumption of a non-assumable contract, thereby violating § 365 of the Bankruptcy Code."[82]

---

[77] *Lasky v. Cont'l Prod. Corp.*, 804 F.2d 250, 256 (3d Cir. 1986).

[78] *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 873 (1988) (citations omitted).

[79] *Id.*

[80] *Harris v. Martin*, 834 F.2d 361, 364 (3d Cir. 1987) (citations omitted) (internal quotation marks omitted).

[81] SWI Complaint ¶ 55.

[82] *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 941 (9th Cir. 2007).

Here, assuming the truth of SWI's allegations concerning the Lease Agreement and having already found that SWI adequately alleged that a mandatory purchase provision could convert the Lease Agreement into a financial accommodations contract that could not have been assumed, the Court concludes that vacating the Assumption Order for the purpose of unwinding the assumption of an otherwise non-assumable contract may be warranted.[83]   Accordingly, the Court concludes that SWI has adequately pled its claim under Rule 60(b)(1)(6) and Count II will not be dismissed.

### E.   Count III:  Secured Status of McGillis's Claim

SWI further asserts in the alternative that McGillis at best has only a secured claim that was satisfied and discharged by operation of the Plan.  The Bankruptcy Code defines a "security interest" as a "lien created by an agreement," and it defines a "claim" as a "right to payment."[84]  For the reasons stated in the preceding paragraphs, the Court has concluded that if the Lease Agreement is deemed to contain a mandatory purchase obligation, then the Lease Agreement could be determined to be a security agreement under Montana law securing the debt obligation by SWI to McGillis on account of the Property's purchase price.

---

[83] SWI also asserts that extraordinary circumstances may be shown because enforcing the mandatory purchase obligation would interfere significantly with the administration of SWI's Plan.  In support, SWI asserts that enforcing the Lease Agreement, if it is determined to include a mandatory purchase obligation, would force SWI to "expend[] much needed cash for the obligation to the detriment of other creditors who provided financing to the Reorganized Debtor and agreed to accept notes payable from the cash flow of the Reorganized Debtor in partial satisfaction of their claims."   SWI Complaint ¶ 5.  Accepting SWI's allegations, the Court finds that the economic realities favor SWI's argument because the required purchase of the Property for approximately $7.5 million will certainly impose a significant burden on SWI and its reorganized entity, and upon a determination of breach, may affect the distribution scheme approved under the Plan.

[84] 11 U.S.C. § 101(51), (5)(A).

Here, if the Lease Agreement suffices to give McGillis a security interest in the Property while SWI's payment for the Property remains outstanding, then McGillis has a fully secured claim against SWI. Under the Bankruptcy Code, a claim is "a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property."[85] McGillis would thus have a secured claim to extent to the Property's value. SWI alleges, however, that the Plan provides that SWI can fully satisfy "miscellaneous secured claims" by simply turning over the collateral that secures such claims to the secured claim holders.[86] By vacating the Property as of March, 2010, SWI asserted that it has therefore fully satisfied McGillis's claim against it.[87] If the Court accepts the truth of these allegations, as it must at this stage, then it must conclude that SWI has adequately asserted that its obligation to McGillis has been satisfied and discharged.

### F.    Count IV: Whether McGillis's Claim is Barred by the Assumption Order

By Count IV, SWI argues that the Assumption Order nonetheless bars McGillis's claim. SWI alleges that the Assumption Order granted SWI's motion to assume the Lease Agreement, which stated that McGillis was entitled to a $0 cure amount.[88] However, SWI maintains that if the Lease Agreement contained a mandatory purchase obligation in the Purchase Provision, then SWI had defaulted on its obligation on December 25, 2008, when the Lease Term expired, because it did not purchase the

---

[85] *Id.* § 506(a)(1).

[86] SWI Complaint ¶ 60.

[87] *Id.* ¶ 61.

[88] *Id.* ¶ 69. Section 365(b)(1) provides that "[i]f there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—(A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ." 11 U.S.C. § 365(b)(1).

Property at or before this time.[89]  SWI asserts that when its motion to assume the Lease Agreement was pending before the Court, McGillis already would have had a breach claim against SWI, which SWI would have had to cure in order to properly assume the Lease Agreement.[90]  However, McGillis did not object to SWI's assumption of the Lease Agreement as proposed in the SWI's motion, despite the zero-cure provision, and therefore did not assert its contractual right to cure damages.[91]

The Court notes that McGillis insists that the Lease Amendment extended the Lease Term and operated to revive the Purchase Provision, such that SWI could not have breached this provision until March 2010.[92]  However, at this stage, the Court is obligated to assume the truth of SWI's allegations and make all reasonable inferences in its favor.  The Court concludes therefore that SWI has sufficiently alleged that the Assumption Order bars McGillis's claims on account of SWI's alleged breach of the Purchase Provision.  Based upon SWI's allegations, McGillis's claims arose, if at all, before SWI moved to assume the Lease Agreement, such that McGillis's failure to assert its right to cure damages operates to bar McGillis from asserting such claims after the Assumption Order was entered.

---

[89] *Id.* ¶¶ 65, 66, 68.

[90] *Id.* ¶ 69.

[91] *Id.* ¶ 69.

[92] While McGillis concedes that SWI may have initially breached the Lease Agreement by not purchasing the Property on or before December 25, 2008, McGillis maintains that the Lease Amendment effectively proposed a means for SWI to cure this breach by allowing SWI to purchase the Property at the end of the extended Lease Term in March 2010.

### G.  Count VI:  SWI's Defenses to McGillis's Claim

By Count VI, SWI generally pleads various affirmative defenses to the claims McGillis asserted against SWI in the Montana Litigation, which are all now before this Court.  Specifically, SWI alleges that McGillis's claims under the Purchase Provision (1) are invalid because the provision was not validly assumed, (2) are barred by the doctrines of estoppel, waiver, and unclean hands, and (3) in any event, are subject to mitigation.  The Court addresses each defense in turn.

### 1.  Whether the Purchase Provision Was Assumed in Contravention of § 363

SWI argues that it could not have assumed the Lease Agreement with a mandatory purchase obligation because, even if the Lease Amendment revived the Purchase Provision, SWI could not have validly entered into the Lease Amendment without the Court's approval, if such amendment contained the alleged mandatory purchase obligation.  SWI asserts that doing so would have violated 11 U.S.C. § 363(b)(1).  Section 363(b)(1) provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[93] The Third Circuit has adopted a two-step approach to determining whether a transaction is made in the "ordinary course":  a "horizontal dimension" test and a "vertical dimension" test.[94]  The "horizontal dimension" test considers "whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by

---

[93] 11 U.S.C. § 363(b)(1).

[94] *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992).

companies in that industry."[95]    The "vertical dimension" test considers "whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit."[96]    "The primary focus thus is on the debtor's pre-petition business practices and conduct, although a court must also 'consider the changing circumstances inherent in the hypothetical creditor's expectations.'"[97]

The Court finds that under both prongs of the Third Circuit test the entry by SWI into a contract obligating SWI to purchase the Property before the expiration of the Lease Term cannot be deemed an "ordinary course" transaction within the meaning of § 363.  First, the horizontal test cannot be satisfied because it is unlikely that retailers of sporting goods, such as SWI, ordinarily purchase multi-million dollar properties; rather, it is much more likely that such businesses simply lease commercial space to operate their stores.  Second, executing the Lease Amendment, to the extent that it contained the alleged mandatory purchase provision, could have likely exposed McGillis to greater risk during the pendency of SWI's bankruptcy case than that to which it had been exposed when it executed the Lease Agreement prepetition.  Simply put, there is nothing "ordinary" about a commitment to buy a $7.5 million asset.  Accepting the truth of SWI's allegations—that it was indeed in the business of selling goods instead of buying multi-million dollar properties—the Court concludes that the Lease

---

[95] *Id.* at 953 (citation omitted).

[96] *Id.* (citation omitted) (internal quotation marks omitted).

[97] *Id.*

Amendment, to the extent that it contained a mandatory purchase provision, could not have been executed without this Court's approval and, to the extent that it was, such a transaction would have violated § 363(b)(1).  Accordingly, the Court finds that SWI has sufficiently alleged that SWI could not have entered into the Lease Amendment and thereafter assumed the lease without violating the Bankruptcy Code.[98]  Such a transaction outside the "ordinary course" of SWI's business is, thus, voidable.[99]

### 2.  Whether Estoppel Bars McGillis's Claims

Collateral estoppel may be appropriate when (i) the issue sought to be precluded is the same as the one involved in the prior action; (ii) the issue was actually litigated in the prior action; (iii) the issue was determined by a final and valid judgment; and (iv) the issue's determination was essential to the prior judgment.[100]  It is well established that collateral estoppel may operate to bar a party from re-litigating facts and issues in bankruptcy proceedings, especially in the context of claims and discharges.[101]

SWI argues that McGillis is estopped from asserting a claim for damages grounded in the SWI's alleged breach of the Purchase Provision because McGillis did not previously assert its right to damages based upon this same alleged breach, which SWI asserts occurred in December 2008, as discussed above.  SWI asserts that McGillis's

---

[98] *See* SWI Complaint ¶ 91.

[99] *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 351 (3d Cir. 1999) (holding that transaction "outside course of business is unenforceable"); *In re Roth*, 975 F.2d at 952 n.3 ("In the event that a transaction is undertaken that is not in the ordinary course of business without notice and a hearing, it may be avoided in bankruptcy [under § 549(a)(2)(B)].").

[100] *In re Doctoroff*, 133 F.3d 210, 214 (3d Cir. 1997).

[101] *Grogan v. Garner*, 498 U.S. 279, 284-85 (1991); *Krenowsky v. Haining (In re Haining)*, 119 B.R. 460, 464 (Bankr. D. Del. 1990).

failure to raise its right to damages when SWI's motion to assume the Lease Agreement was before the Court operates to bar its claim for the same breach at this stage. Assuming that, as SWI has alleged, the parties did not revive the Purchase Provision under the Lease Amendment and McGillis could have asserted a claim for breach of the Purchase Provision before the Lease Agreement was assumed, McGillis's failure to do so forecloses its ability to do so now.[102] The Court concludes that SWI has adequately asserted its defense of estoppel.

### 3.  Whether McGillis Has Waived Its Claim

Waiver is the "intentional relinquishment of a known right."[103]  Similar to its estoppel defense, SWI argues that by not asserting its right to damages based upon SWI's alleged default in December, 2008, McGillis thereby waived its right to do so later for the same breach.  SWI alleges that when McGillis choose not to assert its right to seek damages for SWI's breach, grounded in SWI's failure to purchase the Property in December, 2008, McGillis waived its right to do so if and when SWI would fail to purchase the Property in March, 2010.  Put another way, SWI asserts that even if the Lease Amendment revived the Purchase Provision, McGillis had already waived its right to seek damages or performance on account of the Purchase Provision under the amended and assumed Lease Agreement because it had neither asserted its cure claim based upon SWI's alleged default nor clearly reinstated SWI's duty to strictly perform

---

[102] SWI Complaint ¶ 92.

[103] *Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1109 (3d Cir. 1996); *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 51 (3d Cir.1988).

this obligation when the parties executed the Lease Amendment.[104]  Assuming the truth

of SWI's allegations and for the reasons stated above, the Court concludes that SWI has

adequately asserted its defense of waiver.

### 4.   Whether the Doctrine of Unclean Hands Bars McGillis's Claims

The Supreme Court has explained that the unclean hands doctrine "is a self-

imposed ordinance that closes the doors of a court of equity to one tainted with the

inequitableness or bad faith relative to the matter in which he seeks relief, however

improper may have been the behavior of the defendant."[105]  "[T]he primary principle

guiding application of the unclean hands doctrine is that the alleged inequitable

conduct must be connected, i.e., have a relationship, to the matters before the court for

resolution."[106]

SWI argues that the doctrine of unclean hands should bar McGillis's claims

against it because McGillis improperly concealed its interpretation of the Lease

Agreement and the Purchase Provision.[107]  For the reasons discussed above, the Court

finds that SWI has not sufficiently alleged any facts from which the Court could

conclude that McGillis has engaged in any improper or inequitable conduct.

Accordingly, the Court concludes that SWI has not adequately pled the unclean hands

---

[104] *See* SWI Complaint ¶ 92.

[105] *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945).

[106] *New Valley Corp. v. Corp. Prop. Assocs.(In re New Valley Corp.)*, 181 F.3d 517, 525 (3d Cir. 1999) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)).

[107] SWI Complaint ¶ 90.

doctrine as a defense to McGillis's claim, such that this portion of Count VI will be dismissed.

### 5. Whether McGillis's Damage Claim Should Reduced

The duty of an aggrieved party to mitigate its damages upon breach by a counter-party is a well-established principle of contract law.[108]   "[T]he amount recoverable by the damaged party must be reduced by the amount of losses which could have been avoided by that party's reasonable efforts to avoid them."[109]  Montana law, which governs the Lease Agreement, provides that "a nondefaulting party in a contractual arrangement must act reasonably under the circumstances so as not to unnecessarily enlarge damages caused by default."[110]   However, a "damaged party is only expected to do what is reasonable under the circumstances and need not embark upon a course of action which may cause further detriment to him."[111]   Ultimately, whether an injured party violated his duty to mitigate damages is a question for the trier of fact when there is conflicting evidence.[112]

SWI argues that in the event that it is found liable to McGillis on account of the Lease Agreement, McGillis's damage award should, nonetheless, be reduced because McGillis failed to mitigate its damages.  SWI argues that the $3 million damage claim

---

[108] *See* RESTATEMENT (SECOND) OF CONTRACTS § 350(1) (1979).

[109] *Turner Constr. Co. v. First Indem. of Am.*, 829 F. Supp. 752, 761 (E.D. Pa. 1993).  *See also S.J. Groves & Sons Co. v. Warner Co.*, 576 F.2d 524, 528 n.5 (3d Cir. 1978); 5A Corbin on Contracts § 1039 (1964).

[110] *Bronken's Good Time Co. v. J.W. Brown & Assoc.*, 661 P.2d 861, 864 (Mont. 1983) (citations omitted).

[111] *Gierke v. Walker*, 927 P.2d 524, 527 (Mont. 1996); *Romain v. Earl Schwartz Co.*, 779 P.2d 54, 56-57 (Mont. 1989).

[112] *Id.*

"exceeds any reasonable calculation of damages," and that "had McGillis not ejected SWI from the Property against SWI's express desire, it would still be collecting rent which would mitigate the alleged damages, and the Property would be more valuable with a paying tenant."[113]   SWI further alleges that McGillis has failed to mitigate its damages by failing to lease or sell the Property.[114]   Assuming the truth of these allegations, the Court concludes that SWI has adequately alleged mitigation as a partial defense to McGillis's damage claim for the purposes of reducing McGillis's claim.

## CONCLUSION

For the foregoing reasons, the Motion will be granted in part and denied in part. Specifically, the Motion is granted to the extent that it seeks dismissal of Count V and the portion of Count VI that alleges the unclean hands doctrine as an affirmative defense.  The Motion is denied in all other respects because the Court concludes that it has jurisdiction to hear all Counts in the complaint, that abstention is inappropriate as to Counts I and VI, and that all remaining counts sufficiently pled to withstand dismissal at this stage.  An order will be issued.

---

[113] *Id*. ¶ 89.

[114] *Id*. ¶ 89.